UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JETSON MITCHELL, individually and on behalf of all others similarly situated, ) ) ) SHERMAN RIDER, individually and on ) Behalf of all others similarly situated ) ) Plaintiffs, ) ) v. ) ) MURRAY ENERGY CORPORATION, and ) THE AMERICAN COAL COMPANY, INC. ) ) Defendants. ) | Case No. 17-CV-00444-NJR-RJD Judge: Hon. Nancy J. Rosenstengel Judge: Hon. Reona J. Daly |

**DEFENDANTS' MOTION TO DISMISS COUNT II OF FIRST AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Murray Energy Corporation ("Murray") and The American Coal Company, Inc. ("TACC") (collectively "Defendants"), jointly and for their Motion to Dismiss Count II of First Amended Complaint, hereby state as follows:

**I.    The Plaintiffs Add a Futile "Plant Closing" Claim to Plaintiff Mitchell's Existing WARN Act Claim.**

On April 28, 2017, Plaintiff Jetson Mitchell ("Mitchell") filed and served his initial Complaint in this matter, alleging in a single Count that Defendants violated the WARN Act by implementing a "mass layoff" under 29 U.S.C. § 2102 without issuing WARN notices. Compl., Doc. 1.  On June 13, 2018 he sought, and the Court subsequently granted, leave to amend the Complaint to add Plaintiff Sherman Rider ("Rider") and a second purported class. Doc. 41.  The First Amended Complaint ("Amended Complaint"), as filed on October 17, 2018, adds a second Count alleging Defendants failed to provide Rider and his class proper WARN notice due to delays in the implementation of planned layoffs. Doc. 51.

In their Opposition to Plaintiffs' Motion for Leave to file their Proposed First Amended Complaint, Defendants pointed out the proposed second Count is futile because: (i) the "plant closing" allegation is time-barred insofar as Plaintiff[[s] sought leave to add the claim more than eight months after Rider's layoff, while the applicable statute of limitations is six months; (ii) even assuming *arguendo* the "plant closing" allegation is not time-barred, Plaintiffs cannot assert a claim based on Defendants providing employees with *more* than the required 60-days' notice; and (iii) Plaintiffs failed to plead factual allegations sufficient to support Count II. Doc. 42.

The Court granted Plaintiffs' Motion for Leave to Amend the Complaint, but noted, "[t]he Court finds that Defendants' futility arguments are better suited for a motion to dismiss that will allow for more robust briefing on the issues." Doc. 45, at *4.  Defendants now move for dismissal of Count II of the Amended Complaint on those grounds.

## II. Count II Fails as a Matter of Law.

### A. The Applicable Statute of Limitations Bars Count II.

Count II fails because it is untimely. As Plaintiffs acknowledge in their Motion for Leave to Amend:

> The [WARN] Act contains no statute of limitations, and thus, courts determine the applicable statute of limitations under the Act by looking to the most closely analogous state statute setting forth a statute of limitations for bringing a civil action, unless doing so would frustrate the purpose or operation of the Act . . . Regulations under the Illinois [WARN] Act establish an administrative claims process and require that administrative claims be filed within 6 months of a violation. *See* Ill. Admin. Code. Title 56 §§ 230.310, 230.500 (2018).

Doc. 41, p. 14.

Plaintiffs moved to file the Amended Complaint on June 13, 2018, more than eight months after Rider's layoff.  Doc. 41; Amended Comp. Para. 65 (alleging October 3, 2017 layoff).  Given that the Illinois WARN Act is directly analogous to the federal WARN Act, its statute of limitations applies here, and Count II falls outside the applicable six-month statute of limitations.

2

In their Motion for Leave to Amend, Plaintiffs unsuccessfully attempted to save the untimely filing by arguing, "administrative deadlines should not be used to establish statute of limitations under the WARN Act." Doc. 41, p. 15. They support this argument through citations to two cases in other jurisdictions, comparing the federal WARN Act to state wage and labor relations statutes. *Id*. (citing *Staudt v. Glastron, Inc.*, 92 F.3d 312, 315 (5th Cir. 1996) (applying Texas wage law); *Nelson v. Formed Fiber Techs., Inc.*, No. 2:10-cv-00473-GZS, 2012 U.S. Dist. LEXIS 52345, at *9 (D. Me. Apr. 13, 2012) (applying Maine labor relations law).

Plaintiffs' arguments fail for a simple reason: neither Texas nor Maine maintains a state WARN Act. Consequently, the *Staudt* and *Nelson* Courts possessed no recourse other than to assess whether a contract (or tort) limitations period applied more directly than more administratively focused statutes. In Illinois, though, the state WARN Act specifically incorporates and parallels the federal WARN Act. *Compare* Ill. Admin. Code. Title 56 §§ 230.110-20; 230.200-40 *with* 29 U.SC. §§ 2101-04; *see also* 820 Ill. Comp. Stat. Ann. 65/55 ("[W]henever possible, this [Illinois WARN] Act shall be interpreted in a manner consistent with the federal Worker Adjustment and Retraining Notification Act.").

Plaintiffs also pointed to *Burnett v. Grattan*, 468 U.S. 42, 50-52 (1984) in support of their argument that the Illinois WARN Act is not analogous to the federal WARN Act. *Burnett*, however, compared claims brought under the Reconstruction Era's Civil Rights Act to a state statute's limitations period, rather than directly parallel statutes. The Court's holding turned on the difference in purpose between the federal and state statutes. Specifically, the state statute at issue defined the enforcement powers of the Maryland Human Rights Commission. Its purpose, as the Court found, differed greatly from the purpose of the Reconstruction-era Civil Rights Act. The Court explained, "[t]he goals of the federal statutes are compensation of persons whose civil

3

rights have been violated, and prevention of the abuse of state power." *Id*. at 53. Conversely, "[t]he stated goal of the state administrative procedure is the prompt identification and resolution of employment disputes. The administrative scheme, including a short statute of limitations, encourages conciliation and private settlement through the agency's intervention in live disputes." *Id*. at 54.

Here, the federal WARN Act and the Illinois WARN Act serve ***precisely the same purpose***. The Department of Labor summarizes the purpose of the federal WARN Act as:

> [P]rovid[ing] protection to workers, their families and communities by requiring employers to provide notification 60 calendar days in advance of plant closings and mass layoffs. Advance notice provides workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market. WARN also provides for notice to State dislocated worker units so that dislocated worker assistance can be promptly provided.

20 C.F.R. § 639.1.

Comparatively, on May 18, 2004, Rep. Constance A. Howard, the Sponsor of the Bill that became the Illinois WARN Act, explained the state law's purpose as:

> [The Illinois WARN Act] would insure that workers and local communities are given ample notice in the event of a plant closing or mass layoff. It would allow local government agencies that provide retraining, placement and other adjustment assistant services to dislocated workers to better serve the community and would help facilitate workers reentry into the workforce. Currently, Illinois has no state law regarding layoff notification. This Bill would mirror legislation already in place in California and Wisconsin. It would require employers to notify workers and government agencies within 60 days when ordering a mass layoff for termination.

Illinois House Transcript, 2004 Reg. Sess. No. 129.

This purpose directly parallels the purpose of the federal WARN Act. The stark contrast between the overlapping goals of the two WARN Acts on one hand, and the divergent goals of the Reconstruction-era Civil Rights Act and Maryland administrative statute on the other, prevent application of *Burnett* to this case.

Further, Plaintiffs are wrong about any practical difficulties existing in this case. *See* Doc. 41, p. 16. Rather than complicated mathematic calculations of employment losses as Plaintiffs argue, the Amended Complaint's new Count relies instead on straightforward analysis of dates of various WARN notices. *See* Amended Complaint, Para. 101-13. Consequently, *Burnett* is irrelevant to the statute of limitations here.

No state law could conceivably be more "closely analogous" to the federal WARN Act than the state law bearing the same name, serving the same purpose, and covering the same conduct. *See, e.g., United Steelworkers of America, AFL-CIO-CLC v. Crown Cork & Seal Co., Inc.*, 34 F.3d 53 (3d Cir. 1994) (explaining that courts determine the applicable statute of limitations under the Act by looking to the most closely analogous state statute setting forth a statute of limitations for bringing a civil action). Consequently, the six-month limitations period of Ill. Admin. Code. Title 56 § 230.310 requires dismissal of Count II of the Amended Complaint.

### B. Plaintiffs Wrongly Rely on a Regulation Protecting Employees from *Less* Than 60 Days' Notice to Allege a Violation Based on *More* Than 60 Days' Notice.

1. <u>Plaintiffs Cannot Use Department of Labor Regulations to Invent an Unprecedented Private Cause of Action.</u>

Count II also fails as a matter of law because the WARN Act does not recognize such a claim. Count II instead relies solely upon a Department of Labor regulation, 20 C.F.R. § 639.10(a), which states:

> If the postponement [of WARN Act event] is for less than 60 days, the additional notice should be given as soon as possible to the parties identified in § 639.6 and should include reference to the earlier notice, the date (or 14-day period) to which the planned action is postponed, and the reasons for the postponement. The notice should be given in a manner which will provide the information to all affected employees.

Based on this regulation, Plaintiffs allege:

5

> On information and belief, Defendants failed to provide notice as soon as possible of the postponement of the plant closing and the resulting employment losses at Galatia, as required by the WARN Act and 20 C.F.R. § 639.10(a).

Amended Complaint, Para. 111.

As an initial matter, while the Department of Labor's regulations implement and interpret the WARN Act, Plaintiffs can point to no statutory provision or judicial precedent creating a **private cause of action** based entirely on purported violation of a mere regulation. Though Plaintiffs argue the Department of Labor's regulations "have the force of law," this argument is unpersuasive, as regulations can have the "force of law" without creating an independent private cause of action. Congress has empowered many other federal agencies, such as the Occupational Safety and Health Administration ("OSHA") and the Department of Transportation ("DOT"), to prescribe regulations or other authority to effectuate statutes, but that delegated authority does not extend to private parties to enforce those regulations. *See, e.g.*, *Crane v. Conoco, Inc.*, 41 F.3d 547, 553 (9th Cir. 1994) (holding OSHA regulations do not provide a private right of action); *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 308-09 (6th Cir. 2000) (holding OSHA regulations do not provide a private right of action).

In fact, the *Martinka* case Plaintiffs cited in its Motion for Leave to Amend illustrates this distinction in sharp relief. *UMW v. Martinka Coal Co.*, 202 F.3d 717, 720 n.2 (4th Cir. 2000). There, the Fourth Circuit noted that DOL regulations have the force of law only in the context of explaining that a regulation merely clarifies "[t]he purpose of the [WARN] Act" as background for the statutory language itself. *Martinka*, 202 F.3d at 720. The Court rested its rationale in the case on the statutory language, and actually *rejected* the defendant's reliance on a regulation because its reading of that regulation would contradict the statutory language. In sum, the regulations matter, but they do not create a private cause of action unto themselves.

6

Even more importantly, the Supreme Court directly contradicted the Plaintiffs' position here one year ***after** Martinka*. In *Alexander v. Sandoval*, 532 U.S. 275 (2001), the Court rejected a civil rights claim based on alleged violations of Department of Justice regulations, stating:

> Both the Government and respondents argue that the *regulations* contain rights-creating language and so must be privately enforceable, but that argument skips an analytical step. Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not. *Touche Ross & Co. v. Redington*, 442 U.S., at 577, n. 18 ("[T]he language of the statute and not the rules must control"). Thus, when a statute has provided a general authorization for private enforcement of regulations, it may perhaps be correct that the intent displayed in each regulation can determine whether or not it is privately enforceable. But it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself.

*Id.*, at 291 (internal citations omitted) (emphasis in original). Thus, despite that Section 602 of the Civil Rights Act of 1964 authorized federal agencies to prohibit discrimination by issuing regulations, the court held that an individual could not rely solely on a regulation in pleading a cause of action. Instead, a statutory basis must support the claim.

Here, Plaintiffs plead Count II as "VIOLATION OF THE WARN ACT, 29 U.S.C. § 2101 *et seq.* and 20 C.F.R. 639.10." Doc. 51, at *19. Like *Alexander,* they cite no *specific* Section of the WARN Act supporting their claim because no such Section exists. Instead, they rely entirely on a regulation unmoored to any statutory language. This attempt goes beyond the mere utilization of a regulation to determine compliance with an identifiable statutory provision. The Plaintiffs cannot rely on the regulation as the only specific authority supporting Count II without treating the Department of Labor as the "sorcerer," rather than "the sorcerer's apprentice." *Id*. As in *Alexander*, Count II is improper and must be dismissed.

### 2. Plaintiffs' Claim of a WARN Act Violation Based on Employees Receiving More Than 60 Days' Notice Contravenes the Statute, Precedent, and Common Sense.

Receiving more than 60 days' notice of a job loss cannot violate the WARN Act, so this Court should dismiss Count II for this reason as well. Plaintiffs allege Defendants committed a violation by laying off employees *later* than 60 days after their WARN Notice dates, rather than *within* that 60 days. To Defendants' knowledge, courts have directly examined allegations of 20 C.F.R. § 639.10(a) violations in only three cases. Those cases show a clear distinction: a layoff within 60 days of a delay Notice *may* form the basis of a violation, but layoffs occurring after 60 days categorically cannot. The rationale is simple: no damages exist where an employee works *longer* than the notice period.

*Local 1239, Int'l Bhd. Of Boilermakers v. Allsteel, Inc.*, 1998 WL 808981 (N.D. Ill. 1998), the only case cited by Plaintiffs on this issue in their Motion for Leave to Amend, demonstrates that providing too little notice can lead to liability. There, the employer postponed its layoffs and provided insufficient notice of the delay. It issued the first relevant notice on December 10, 1993, advising of layoffs planned for February 11, 1994. The layoffs did not occur that day, however, because the defendant had decided to postpone the layoffs until April 8, 1994. It provided no notification of that decision, and instead merely allowed the original February 11, 1994, date to pass. Then, on February 24, 1994, it belatedly attempted to provide notice of the new layoff date. Two days before the actual April 8, 1994 layoff date, the defendant provided another notice to employees.

Since the employer did not provide the second notice until after the original layoff date, the court found the February 24, 1994, notice invalid, and instead relied upon a later April 6, 1994 Notice. Doc. 44. Given its belated issuance, the second notice was untimely under § 639.10(a) – precluding it from serving as a valid notice of delay. As a result, the Court imposed a remedy

based upon employees receiving only two of the required 60 days' Notice (measured from the April 6, 1994 notice), resulting in 58 days of liability. This rationale fully supports Defendants' contention that WARN Act violations exist only where employees receive less, not more, than 60 days' Notice.

Consistently, three years prior to *Allsteel*, the Northern District of Illinois granted an employer summary judgment where the employer provided more than 60 days notice of a layoff. *Local 179 Intern. Broth. of Teamsters v. TSC Enterprises, Inc.*, 1995 WL 144534 (N.D. Ill. 1995). There, the Court rejected an allegation, similar to Plaintiffs' claim here, that the issuance of five separate WARN Notices created a violation by leaving the actual date of layoffs unclear. *Id.*, at \*6. Despite the Plaintiffs' reliance on 20 C.F.R. § 639.10(a), arguing that it required 60 days' notice of a delayed layoff, the Court disagreed, reasoning:

> WARN's liability provisions encourage giving notice whenever a plant closing is foreseeable. If the information contained in a notice was based on the best information available, **WARN liability may not be imposed because subsequent events render a notice inaccurate.**

*Id.* at \*8 (emphasis added).

Plaintiffs here advance Count II on the same theory, specifically claiming, "[t]he first time that Plaintiff Rider knew with certainty the date of the termination of his employment at Galatia was the date of his termination, October 3, 2017." Amended Complaint, Para. 108. As in *TSC*, subsequent events rendered the notice inaccurate, and the result is the same: Rider received more than 60 days of pay after his initial WARN Notice. Thus, as in *TSC*, Count II fails as a matter of law.

Most recently, the Eastern District of New York decided the third case involving an allegation based on 20 C.F.R. § 639.10(a). *Presser v. Key Food Stores Co-op., Inc.*, 2006 WL 2086346 (E.D.N.Y. 2006) directly addresses the Amended Complaint's allegation here. There,

the plaintiff complained after she received WARN Notice on March 10, 2000 for layoffs to take effect on May 1, 2000 (52 days).  Three other Notices subsequently issued, culminating in a June 22, 2000, Notice that the plant would close on or about July 17, 2000.  The plant actually closed, and the employer laid off the plaintiff on July 29, 2000.

The Court rejected plaintiff's allegations regarding the multiple notices, and the fact that she worked longer than the Notices suggested.  It also addressed an allegation regarding the initial Notices' 52-day period, stating:

> This is ultimately of no consequence because Presser actually worked and received wages through July 29, 2000. *Cf.* 29 U.S.C. § 2104(2)(a) ("The amount for which an employer is liable ... shall be reduced by any wages paid by the employer to the employee for the period of the violation.").

*Id*. at * 19, n. 1.

This point strikes at the heart of Count II here.  Plaintiffs allege a WARN Act violation because Rider and others worked *longer* than their WARN Notices had contemplated.  As the Amended Complaint acknowledges, Defendants issued WARN Notices on April 24, 2017, for a layoff period between July 21, 2017 and August 4, 2018. Amended Complaint, Para. 101.  Then, prior to the dates when the layoffs were to occur, it issued a delay Notice on June 20, 2017, specifying layoff dates between August 6, 2017 and August 20, 2017. *Id*., Para. 102.  Defendants did, according to the Amended Complaint, lay off approximately 100 employees on August 18, 2017. *Id*., Para. 104.  Nonetheless, Rider complains that he was amongst a handful of employees who remained at work until his October 3, 2017 layoff. *Id*. Para. 107.

Because the October 3, 2017, layoff occurred more than 60 days after the June 20, 2017, delay notice, Rider has no damages, and therefore, no claim.  As in *Presser*, the WARN Act provides for dates based the *absence* of work during the 60 days following issuance of a WARN notice.  29 U.S.C. § 2104.  For this reason, the *Allsteel* is inapposite..  Likewise, the WARN Act

10

provides no remedy for an extended *continuation* of work after issuance of Notices. Consequently, Count II fails as a matter of law.

### C. Even Incorrectly Assuming Plaintiffs Alleged a Plausible Legal Theory, the Proposed Amendment Lacks Factual Allegations Sufficient to Establish a Violation under His Theory.

Even though the Amended Complaint invents its own novel WARN Act claim, it nonetheless falls short of the *Twombly/Iqbal* pleading standard for that invention. The premise of its allegation is: "[o]n information and belief, Defendants failed to provide notice as soon as possible of the postponement of the plant closing and the resulting employment losses at Galatia[.]" Amended Complaint, Para. 111.

Nowhere, however, do Plaintiffs explain the basis for that "information and belief." The only allegation even plausibly relating to this claim states:

> On July 22, 2017, Matt Efaw, General Superintendent at Galatia, drafted an e-mail setting forth a plan to reduce the number of workers at Galatia to 100 or less by August 20, 2017, and stating that "[b]y getting the operation to 100 or less employees, we are not required to provide any additional Warn notices."

Amended Complaint, Para. 103.

Conspicuously, nothing in that allegation establishes the need for Defendants to provide any additional WARN Notices. At most, this allegation shows knowledge of the possibility that some number of employees, less than 100, may continue working past the period specified in the June 20, 2017 Notice. The difference between this allegation and the "information and belief" supporting Plaintiffs' conclusory allegation that, "Defendants failed to provide notice as soon as possible of the postponement of the plant closing" creates a logical gap. No other allegations in the Amended Complaint fill that gap. A conclusory allegation based upon "information and belief is insufficient to survive a Motion to Dismiss. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 917 (7th Cir. 2013) (dismissing duty of fair representation suit against labor union because, "[t]he plaintiffs

generally allege an arbitrary failure to act on their grievances ('upon information and belief, none have been processed and all are dead'), but factual detail in support of this otherwise conclusory allegation is entirely missing.").

Consequently, the Count II does not satisfy the *Twombly*/*Iqbal* standard, and the Court must reject it as futile.

## CONCLUSION

For all of these reasons, the Court must dismiss Count II of Plaintiffs' untimely First Amended Complaint.

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

/s/ R. Lance Witcher
R. Lance Witcher, IL Bar #6279646
Sarah J. Kuehnel, IL Bar #6301817
Harrison C. Kuntz, MO Bar #70178
7700 Bonhomme Avenue, Suite 650
St. Louis, Missouri 63105
Telephone: 314.802.3935
Facsimile: 314.802.3936
lance.witcher@ogletreedeakins.com
sarah.kuehnel@ogletreedeakins.com
harrison.kuntz@ogletreedeakins.com

Date: October 31, 2018                Attorneys for Defendants

## CERTIFICATE OF SERVICE

   I hereby certify that on October 31, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system to be served on the following registered participants: Kevin P. Green, Thomas P. Rosenfeld, Thomas C. Horscroft, and Thomas J. Lech.


               /s/ R. Lance Witcher


                     36037971.2