THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JETSON MITCHELL and SHERMAN RIDER, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 17-CV-444-NJR-RJD ) |
| MURRAY ENERGY CORPORATION, and AMERICAN COAL COMPANY, INC., | ) ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

In this putative class action, Plaintiffs Jetson Mitchell and Sherman Rider ("Plaintiffs") allege Murray Energy Corporation ("Murray") and The American Coal Company, Inc. ("TACC") (collectively "Defendants") violated the Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. § 2101 *et seq.*, when they failed to provide their employees with proper 60-day termination notices (Doc. 51).

According to the First Amended Complaint, filed on October 17, 2018, Defendants previously operated two mines in Galatia, Illinois (Doc. 51, p. 6). In April 2017, Defendants decided to close the mines, and on April 22, 2017, they terminated approximately 122 employees without notice (*Id.* at pp. 1 & 9). On April 24, 2017, Defendants sent letters to its approximately 200 remaining employees to inform them of an impending layoff (*Id.* at p. 9). The letter stated, in part, "We are writing to inform you

that there will be a mass layoff . . . on July 21, 2017, or within the two (2) weeks there following. *This mass layoff is expected to be permanent"* (*Id.*). On June 20, 2017, Defendants sent another letter to the same 200 employees, informing them that delays in closing the mines would postpone the layoff until August 6, 2017, or within the two weeks there following (*Id.* at p. 10). Subsequent internal emails indicate Defendants concluded that a layoff would not be possible by those dates (*Id.*). Around August 18, 2017, Defendants terminated approximately 100 employees (*Id.* at 11). Almost a month later, on September 23, 2017, Defendants terminated approximately twenty-five more employees (*Id.* at 13). Around October 3, 2017, Defendants terminated another fourteen employees, including Plaintiff Rider (*Id.*). It appears Defendants terminated the last Galatia employee on November 11, 2017 (*Id.*).

The First Amended Complaint seeks to certify two classes and sets forth two corresponding counts: (1) all Galatia employees terminated on or within 90 days of April 22, 2017, who did not receive proper notice within 60 days of their termination; and (2) all Galatia employees who were terminated after August 20, 2017, and did not receive notices of the postponement of the layoff (*See* Doc. 51). Defendants filed a motion to dismiss, arguing Count II is time-barred and fails to state a claim (Doc. 63). Plaintiffs filed a timely response in opposition to the motion (Doc. 71), and the Court heard arguments from counsel on February 11, 2019 (*see* Doc. 74).

## DISCUSSION

The WARN Act does not contain a statute of limitations and was passed before Congress enacted the general four-year statute of limitations for federal statutes, 28 U.S.C.

§ 1658. When there is no federal statute of limitations expressly applicable to a suit, the Court must apply "the most suitable statute," which is generally "the most closely analogous statute of limitations under state law." *DelCostello v. International Broth. of Teamsters*, 462 U.S. 151, 159 (1983). Here, the most analogous state law is the Illinois Worker Adjustment and Retraining Notification Act, ILL. ADM. CODE tit. 56, § 230.100, *et seq.* (hereinafter "the Illinois Act"), which substantively parallels the WARN Act. But unlike the WARN Act, the Illinois Act requires employees to utilize an administrative process to remedy violations. *Id.* at § 230.310. That process mandates filing a complaint with the Illinois Department of Labor within six months of an alleged violation. *Id.*

Defendants urge the Court to borrow the six-month statute of limitations set forth in the Illinois Act, which would time-bar Count II of the First Amended Complaint. Plaintiff Rider, on the other hand, asserts it would be erroneous to apply an administrative statute of limitations. Instead, he insists the Court should apply Illinois' statute of limitations for written or unwritten contracts, which is five years and ten years, respectively. 735 ILL. COMP. STAT. 5/13-205, 206.

The Supreme Court addressed a similar issue in *Burnett v. Grattan*, 468 U.S. 42 (1984), where it found it erroneous to apply a state law's administrative statute of limitations to the federal Civil Rights Act. The Court observed, "[B]orrowing an administrative statute of limitations ignores the dominant characteristics of civil rights actions: they belong in court." *Burnett*, 468 U.S. at 50. The Court noted that a civil rights action requires "considerable preparation" on behalf of plaintiffs, while the state administrative procedure merely requires signing a complaint with the state's human

rights commission. *Id.* at 50-51. Thus, the Court concluded it would be improper to adopt the administrative statute of limitations. *Id.* at 55.

*Burnett*'s reasoning is directly applicable here. Under the Illinois Act, an employee must file a complaint with the Illinois Department of Labor within six months of an alleged violation. ILL. ADM. CODE tit. 56, § 230.310(b). The Illinois Department of Labor then conducts an investigation to determine if a violation has occurred. *Id.* at § 230.500. In contrast, plaintiffs bringing claims under the WARN Act bear the responsibility for investigating and developing their own cases. A plaintiff must "obtain counsel, or prepare to proceed pro se" and "conduct enough investigation to draft pleadings that meet the requirements of federal rules; [the litigant] must also establish the amount of his damages, prepare legal documents, pay a substantial filing fee or prepare additional papers to support a request to proceed in forma pauperis, and file and serve his complaint." *Burnett*, 468 U.S. 42 at 50-51. Additionally, the litigant must simultaneously "look ahead to the responsibilities that immediately follow filing of a complaint." *Id.* at 51. Given the discrepancy in the amount of preparation required to proceed under the state and federal acts, the six-month limitation period set forth in the Illinois Act is a "poor fit" for the WARN Act. *Carroll v. World Marketing Holdings, LLC*, 2018 WL 1832178, at *3 (E.D. Wis. Apr. 17, 2018).

Defendants have not identified an alternative statute of limitation to apply. Accordingly, the Court will adopt Plaintiff Rider's position and apply Illinois' five-year statute of limitations for written contracts or ten-year statute of limitations for unwritten

contracts. Because Count II would be timely under either limitations period, it is unnecessary to determine which one is applicable.[1] Count II is not time-barred.

Defendants argue that even if Count II is timely, it fails to state a claim. Count II alleges Defendants violated the WARN Act by not providing additional notices to employees after postponement of the layoff. Count II derives from 20 C.F.R. § 639.10, a Department of Labor regulation that provides:

> Additional notice is required when the date or schedule of dates of a planned plant closing or mass layoff is extended beyond the date or the ending date of any 14-day period announced in the original notice as follows:
>
> (a) if the postponement [of the WARN Act event] is for less than 60 days, the additional notice should be given as soon as possible to the parties, identified in § 639.6 and should include reference to the earlier notice, the date (or 14-day period) to which the planned action is postponed, and the reasons for the postponement. The notice should be given in a manner which will provide the information to all affected employees.
>
> (b) if the postponement is for 60 days or more, the additional notice should be treated as new notice subject to the provisions of §§ 639.5, 639.6 and 639.7 of this part.

Defendants argue this regulation does not provide a private cause of action because the WARN Act, itself, does not require additional notices in the event of a postponed layoff. *See* 29 U.S.C. § 2102. Instead the WARN Act provides, "An employer shall not order a plant closing or mass layoff until the end of a 60-day period after the

---

[1] Plaintiff Rider was terminated on October 3, 2017, and the First Amended Complaint was filed on June 13, 2018. Thus, the First Amended Complaint easily satisfies both the five- and ten-year limitation period.

employer serves written notice of such an order [to each affected employee]." *Id.* at (a)(1). Defendants cite *Alexander v. Sandoval*, where the Supreme Court stated:

> Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not. Thus, when a statute has provided a general authorization for private enforcement of regulations, it may perhaps be correct that the intent displayed in each regulation can determine whether or not it is privately enforceable. But it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself.

532 U.S. 275, 291 (2001).

In *Sandoval*, the plaintiffs attempted to bring a suit under Section 601 of Title VI of the Civil Rights Act of 1964. The parties agreed that Section 601 only prohibited intentional discrimination, but the plaintiffs sought to bring disparate-impact claims under regulations that prohibited disparate-impact discrimination. *Sandoval*, 532 U.S. 275 at 280. The Court noted, "A Congress that intends the statute to be enforced through a private cause of action intends the authoritative interpretation of the statute to be so enforced as well." *Id.* at 284. Nonetheless, the Court refused to find that the regulations provided a private cause of action, explaining, "The disparate-impact regulations do not simply apply § 601 – since they indeed forbid conduct that § 601 permits – and therefore clear that the private right of action to enforce § 601 does not include a private right to enforce these regulations." *Id.* at 285.

The regulation at dispute here, 20 C.F.R. § 639.10(a) ("The Regulation"), is unlike the disparate-impact regulations in *Sandoval*. This Regulation does not create a new right

or forbid something that the WARN Act does not; the statutory provisions of the WARN Act already entitle covered employees to 60-day notices of their terminations. The Regulation merely clarifies the duties of an employer in issuing those notices. This is exactly what Congress intended when it delegated authority to the Secretary of Labor to "prescribe such regulations as may be necessary to carry out [the WARN Act]." 29 U.S.C. § 2107. Congress directed, "Such regulations shall, at a minimum, include interpretative regulations describing the methods by which employers may provide for appropriate service of notice . . ." 29 U.S.C. § 2107. Because the Regulation is interpretative, and simply applies the WARN Act, Count II alleges a cause of action. *See Local 1239, Int'l Broth. of Boilermakers v. Allsteel, Inc.*, 955 F. Supp. 78, 80 (N.D. Ill. 1996) (recognizing a cause of action under the Regulation).

Defendants next argue Count II should be dismissed because the First Amended Complaint lacks factual allegations necessary to establish a violation under the Regulation. Their argument is brought in a Rule 12(b)(6) motion to dismiss, under which the Court decides the adequacy of the complaint, and not the the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.* For purposes of a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and draw

all possible inferences in favor of the plaintiff. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012).

According to the Regulation, when a scheduled plant closing or mass layoff extends beyond the date of the 14-day period announced in the original notice, the employer must provide additional notice of the new layoff date "as soon as possible." 20 C.F.R. § 639.10. The First Amended Complaint sets forth sufficient factual allegations to establish a plausible claim for relief under the Regulation. It alleges: on April 24, 2017, Defendants sent their employees notice of an impending layoff, anticipated to occur on July 21, 2017 (Doc. 51, p. 9); Defendants provided Plaintiff Rider an additional notice on June 20, 2017, indicating the layoff would be postponed to the 14-day period between August 6, 2017 and August 20, 2017 (*Id.* at p. 10); internal emails from July 2017, explain that the closings would not be complete until late September or early October, 2017 (*Id.*); and Plaintiff Rider was not terminated until October 3, 2018 (*Id.* at p. 13).

The First Amended Complaint also makes allegations based on information and belief: "On information and belief, Defendants could have provided notice of the postponement of the plant closing at Galatia at least as early as July 22, 2017 . . ." (*Id.* at p. 20); and "On information and belief, Defendants failed to provide notices of the postponement of the plant closing and the resulting employment losses that referenced the April 24, 2017 notice . . ." (*Id.* at p. 21).

Defendants contend that making allegations "on information and belief" is inconsistent with federal pleading requirements. Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to

relief." The Supreme Court has stated that Rule 8(a) "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence." *Twombly*, 550 U.S. 544 at 556. Defendants cite *Yeftich v. Navistar, Inc.*, where the plaintiffs' complaint was dismissed under Rule 12(b)(6) because it alleged legal conclusions "on information and belief." 722 F.3d 911. Unlike this case, however, the complaint at issue in *Yeftich*, "lack[ed] the factual specificity required to state a plausible [] claim." *Id.* at 916. Here, Plaintiff Rider set forth factual details supporting his conclusions. He submitted internal emails suggesting Defendants did not provide additional notice of the postponement of his terminations as soon as possible (Doc. 51, Ex. 10); and he did not know the date of his termination with any certainty until the actual date of his termination on October 3, 2017 (Doc. 51, p. 13).

Finally, Defendants argue Count II fails to state a claim because Plaintiff Rider has not sustained any damages under the WARN Act. The WARN Act provides that employees are entitled to "back pay for each day of violation," along with certain benefits under employee benefit plans. 29 U.S.C. § 2104. Defendants argue the WARN Act only provides damages for employees who were not given a full 60-days' notice and were terminated prior to that 60-day period. They suggest Plaintiff Rider worked longer than anticipated, so he has no basis for relief.

Even after adopting Defendants' interpretation of the statute, Plaintiff Rider has plausibly alleged damages. According to Plaintiff Rider, Defendants knew about the postponement of the mine closings on July 22, 2017, but failed to provide any additional notice of his termination until he was let go on October 3, 2017. Thus, the violation period

encompasses the 60 days after October 3, 2017. *See Local 1239, Int'l Broth. of Boilermakers v. Allsteel, Inc.*, 1998 WL 808981, at *1 (N.D. Ill. Nov. 16, 1998); *Allsteel*, 1995 WL 348028, at *5 (N.D. Ill. June 7, 1995) (There, the employer was aware of a new closing date as early as February 14, did not issue notice until April 6, and terminated its employees on April 8. The Northern District of Illinois calculated the violation period to be 58 days, based on "the maximum 60 days minus the two days when employees had notice."). When drawing all possible inferences in favor of Plaintiff Rider, Count II states a claim under Rule 12(b)(6).

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss Count II of the First Amended Complaint (Doc. 63) is **DENIED.**

**IT IS SO ORDERED.**

**DATED: February 20, 2019**

**NANCY J. ROSENSTENGEL**
**United States District Judge**