**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

JETSON MITCHELL and SHERMAN RIDER, )
individually and on behalf of all others similarly )
situated, )
 )
   Plaintiffs, )
 ) Case No. 3:17-cv-444-NJR-RJD
 )
v. )
 )
MURRAY ENERGY CORPORATION and )
THE AMERICAN COAL COMPANY, INC. )
 )
 )
   Defendants. )

<u>**UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION**</u>
<u>**SETTLEMENTS AND MEMORANDUM OF LAW IN SUPPORT**</u>

      **GOLDENBERG HELLER &**
      **ANTOGNOLI, P.C.**
      Thomas P. Rosenfeld #06301406
      Kevin P. Green #06299905
      Thomas C. Horscroft #06327049
      2227 South State Route 157
      Edwardsville, IL 62025
      618-656-5150
      tom@ghalaw.com
      kevin@ghalaw.com
      thorscroft@ghalaw.com

      **LUPER NEIDENTHAL & LOGAN**
      Kenneth M. Richards (admitted pro hac vice)
      1160 Dublin Road, Suite 400
      Columbus, OH 43215
      Telephone:  614-221-7663
      krichards@lnlattorneys.com

      *Class Counsel*

## TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................................. 1

II.    BACKGROUND .................................................................................................. 2

       A.     The Pleadings in this Court ..................................................................... 2

       B.     Plaintiff's Initial Motion for Class Certification ................................... 3

       C.     Defendants' Bankruptcy ......................................................................... 4

       D.     Class Certification by the Bankruptcy Court ........................................ 5

       E.     Confirmation of the Debtors' Chapter 11 Plan .................................... 6

       F.     Discovery ................................................................................................. 7

       G.     Mediation ................................................................................................ 7

       H.     Modification of the Plan Injunction ....................................................... 7

III.   THE SETTLEMENT AGREEMENT ................................................................. 8

       A.     The Class Members ................................................................................. 8

       B.     The Settlement Relief ............................................................................. 8

              i.      Mitchell Class .............................................................................. 8

              ii.     Rider Class ................................................................................. 10

              iii.    Taxes .......................................................................................... 10

       C.     Releases ................................................................................................. 11

       D.     Class Representative Service Award .................................................... 11

       E.     Attorneys' Fees, Costs ......................................................................... 12

IV.    PRELIMINARY APPROVAL AND SUBSEQUENT DEVELOPMENTS ................ 12

       A.     The Preliminary Approval Order .......................................................... 12

       B.     Subsequent Developments .................................................................... 13

V.    ARGUMENT:  THE SETTLEMENT SHOULD BE APPROVED ............................ 14

    A.    Settlements of Class Actions are Favored and Begin with a
          Presumption of Fairness ................................................................................. 14

    B.    The Settlement is Fair, Reasonable, and Adequate ............................................ 15

          1.    The Class Representative and Class Counsel have adequately
                represented the Classes .......................................................................... 16

          2.    The Settlements were negotiated at arm's length under the supervision
                of an experienced third-party mediator .................................................. 18

          3.    The relief provided to the Class Members is adequate ......................... 18

                i.    The WARN Act ........................................................................ 19

                ii.   The Bankruptcy Code and the Plan .......................................... 20

                iii.  Mitchell Class ........................................................................... 21

                iv.   Rider Class ................................................................................ 22

                v.    Rule 23(e)(2)(C) Factors .......................................................... 24

          4.    The Settlements treat class members equitably relative to each other ... 25

          5.    No Class Members have objected to or requested exclusion
                from either Settlement .......................................................................... 26

          6.  Declaration of Class Counsel ..................................................................... 26

VI.   CONCLUSION ......................................................................................................... 27

# TABLE OF AUTHORITIES

**Cases**                                                                                                  **Page(s)**

*Armstrong v. Board of School Directors*,
    616 F.2d 305 (7th Cir. 1980) ...................................................................................15, 26

*County of Monmouth, N.J. v. Fla. Cancer Specialists, P.L.*, No. 2:18-cv-201-FtM-23MRM,
    2019 U.S. Dist. LEXIS 58199 (M.D. Fla. Apr. 4, 2019) .........................................................15

*Dawson v. Patrick*,
    600 F.2d 70 (7th Cir. 1979) ...................................................................................................14

*Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH,
    2018 U.S. Dist. LEXIS 210368 (S.D. Ill. Dec. 13, 2018).........................................................17

*Huffman v. Prudential Ins. Co. of Am.*, No. 2:10-cv-05135,
    2019 U.S. Dist. LEXIS 58667 (E.D. Pa. Apr. 4, 2019) ...........................................................15

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir.1996) ...........................................................................................14, 26

*Kaufman v. Am. Express Travel Related Servs. Co.*,
    877 F.3d 276 (7th Cir. 2017) ..................................................................................................18

*McLeod v. Bank of Am., N.A.*, No. 16-cv-03294-EMC,
    2019 U.S. Dist. LEXIS 40869 (N.D. Cal. Mar. 13, 2019).......................................................16

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
    Case No. 97 C 7694, 2001 U.S. Dist. LEXIS 20397 (N.D. Ill. Dec. 6, 2001).........................14

*Swinton v. SquareTrade, Inc.*, No. 4:18-CV-00144-SMR-SBJ,
    2019 U.S. Dist. LEXIS 25458 (S.D. Iowa Feb. 14, 2019).......................................................16

*Synfuel Tech. v. DHL Express*,
    463 F.3d 646 (7th Cir. 2006) ...........................................................................................16, 26

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*,
    309 F.3d 978 (7th Cir. 2002) ..................................................................................................26

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) .......................................................................................1, 18, 19

**Statutes & Rules**

20 C.F.R. § 639.10 .............................................................................................2, 3, 20, 22, 23

Fed. R. Civ. P. 23(b)(3)........................................................................................................8

Fed. R. Civ. P. 23(e) .............................................................................................7, 14, 15

Fed. R. Civ. P. 23(e)(1)(B) ................................................................................................14

Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii) ..................................................................................114

Fed. R. Civ. P. 23(e)(2)....................................................................................................16

Fed. R. Civ. P. 23(e)(2)(A)-(D) ......................................................................................15

Fed. R. Civ. P. 23(e)(3)....................................................................................................15

Fed. R. Civ. P. 23, Advisory Committee Notes................................................................15

**<u>Other Authority</u>**

Newberg on Class Actions § 11:41....................................................................................14

## I.    INTRODUCTION

Plaintiffs Jetson Mitchell and Sherman Rider ("Plaintiffs"), on behalf of themselves and two certified classes of Defendants' former employees, respectfully submit this Memorandum in Support of Plaintiffs' Unopposed Motion for Final Approval of Settlements.  For the reasons set forth herein, each class settlement agreement with Drivetrain, LLC, in its capacity as trustee and administrator for the Murray Energy Wind-Down Trust (the "Plan Administrator") (the "Settlements") (Docs. 94-1 and 94-2) is fair, reasonable and adequate.

Each Settlement is the product of prolonged litigation both in this Court and the United States Bankruptcy Court for the Southern District of Ohio (the "Bankruptcy Court") as well as contentious, arm's length negotiations between Plaintiffs' counsel ("Class Counsel") and the Plan Administrator overseen by Frank Neuner, an experienced employment law mediator.  Each Settlement affords Settlement Class Members substantial monetary relief while avoiding the inherent risks, delays, and expenses associated with continued, protracted litigation.  For these reasons and others, each Settlement satisfies all criteria for final settlement approval.  *See* Fed. R. Civ. P. 23(e); *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864-65 (7th Cir. 2014).

Accordingly, Plaintiffs respectfully request that the Court grant final approval of each Settlement.

1

## II.    BACKGROUND

### A.    The Pleadings in this Court

On April 28, 2017, Mitchell filed his Class Action Complaint (the "Complaint") against Defendants The American Coal Company ("TACC") and Murray Energy Corporation ("Murray") in this Court, on behalf of Mitchell individually and all others similarly situated, alleging violations of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* (the "WARN Act") (Doc. 1).  The Complaint alleged that Defendants conducted a "mass layoff" within the meaning of the WARN Act by terminating over fifty and at least 33% of the workers at Defendants' Galatia mining complex ("Galatia") during a 30-day period encompassing April 22, 2017.  On June 28, 2017, Defendants moved for summary judgment (the "MSJ"), arguing that fewer than 33% of Galatia's workforce suffered employment loss during the applicable time periods (Doc. 14).  On August 18, 2017, after Mitchell responded, Defendants withdrew the MSJ (Doc. 23).

On October 17, 2018, after obtaining written discovery responses from Defendants, Mitchell and Rider filed their First Amended Complaint (the "FAC"), asserting violations of the WARN Act on behalf of two separate, putative classes of former Galatia workers (Doc. 51).  In Count I, Mitchell alleged that, beginning on or prior to April 22, 2017, Defendants carried out a "plant closing" at Galatia without providing the advanced written notice required by the WARN Act to all affected employees, including Mitchell (the "Mitchell WARN Claims").  In Count II, Rider alleged that he and other similarly situated Galatia workers had not received "additional notice" required by 20 C.F.R. § 639.10 of Defendants' postponement of the Galatia plant closing

2

(the "Rider WARN Claims") (the Mitchell WARN Claims and the Rider WARN Claims are hereinafter collectively referred to as the "WARN Claims").

On October 31, 2018, Defendants filed their Answer and Defenses to the FAC, denying that Mitchell and the putative class he sought to represent suffered employment loss as a consequence of a plant closing and denying any violation of the WARN Act. (Doc. 64). The same day, Defendants filed a Motion to Dismiss Count II of the FAC (the "MTD"), arguing that Count II failed to state a claim upon which relief may be granted for the following reasons:

- The applicable statute of limitations (which Defendants claimed was six-months) bars Count II;

- Violations of 20 C.F.R. § 639.10 do not give rise to a private right of action;

- Rider worked for more than sixty days after receiving a delay notice on June 20, 2017, and, therefore, he has no damages under the WARN Act; and

- Rider failed to state sufficient facts to state a plausible claim for a violation of 20 C.F.R. § 639.10.

Doc. 63.

On February 20, 2019, this Court denied the MTD (Doc. 75).

**B.      Plaintiffs' Initial Motion for Class Certification**

On August 29, 2019, Mitchell and Rider filed their Motion to Certify Classes and Memorandum of Law in Support (Doc. 81). On October 23, 2019, Defendants submitted their consent to Plaintiffs' proposed class certification (Doc. 83).

### C.    Defendants' Bankruptcy

On October 29, 2019, Defendants filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court (the "Bankruptcy Case") (Doc. 84).

On March 6, 2020, Mitchell and Rider commenced in the Bankruptcy Court an adversary proceeding against TACC and Murray Energy, captioned *Jetson Mitchell et al. v Murray Energy Corporation et al.*, Adv. Proc. No. 2:20-ap-02021, asserting the WARN Claims on behalf of Plaintiffs individually and all others similarly situated (the "Adversary Proceeding").

On March 9, 2020, Mitchell and Rider filed a Motion to Certify Classes in the Adversary Proceeding [Adversary Proceeding Docket No. 3]. Also on March 9, 2020, Mitchell, individually and on behalf of all others similar situated (the "Mitchell Class"), timely filed with the Bankruptcy Court Proofs of Claim Nos. 2598 and 2606 against TACC and Murray Energy, respectively (the "Mitchell Class Proofs of Claim"), asserting the Mitchell WARN Claims. On the same day, Rider, individually and on behalf of all other others similarly situated (the "Rider Class"), timely filed with the Bankruptcy Court Proofs of Claim Nos. 2604 and 2612 against TACC and Murray Energy (the "Rider Class Proofs of Claim"), asserting the Rider WARN Claims (the Mitchell Class Proofs of Claim and the Rider Class Proofs of Claim are hereinafter collectively referred to as the "Class Proofs of Claim").

The Class Proofs of Claim filed against TACC assert an entitlement to priority status for WARN Act back pay and benefits pursuant to the Bankruptcy Code, 11 U.S.C. § 507(a)(4), (5).

**D.    Class Certification by the Bankruptcy Court**

On May 20, 2020, the Bankruptcy Court, pursuant to Federal Rule of Civil Procedure 23,

certified the Mitchell Class and the Rider Class with respect to the WARN Claims (the

"Certification Order").  *See* Doc. 94-3.

The Certification Order defines the Mitchell Class as follows:

> All employees at the mining complex in Galatia, Illinois ("Galatia") whose
> employment ended voluntarily at any time during the period April 22, 2017,
> to July 21, 2017, as a consequence of the alleged plant closing, and who did
> not return to work at Galatia within six months of the date their employment
> ended.  The Class does not include (1) any employees who were terminated
> for cause or who accepted early retirement incentives instead of being laid
> off; or (2) any employees of David Stanley Consultants, Inc., and Redbird
> Machinery, LLC.

*Id.* at 5.

The Certification Order defines the Rider Class as follows:

> All employees at Galatia whose employment ended voluntarily at any time
> during the period August 21, 2017, to October 14, 2017, as a consequence
> of the alleged plant closing.   The Class does not include (1) any employees
> who were terminated for cause; or (2)(i) received an offer from TACC or
> Murray Energy to transfer employment to another site of employment; (ii)
> accepted the offer with 30 days of receiving the offer; and (iii) did not
> experience more than a six-month break in employment.

*Id.*

The Certification Order appointed Mitchell and Rider as class representatives of the

Mitchell Class and Rider Class, respectively, (the Mitchell Class and the Rider Class are

collectively referred to as the "Classes") and Thomas P. Rosenfeld, Kevin P. Green, and Thomas

C. Horscroft of Goldenberg, Heller, & Antognoli, P.C. and Frederick M. Luper[1] and Kenneth M.

Richards of Luper, Neidenthal & Logan as counsel for the Classes ("Class Counsel").  *Id.* at 7.

---

[1] Since the Certification Order, Mr. Luper has passed away.  Mr. Richards has continued to serve
as class counsel to the Classes.

Notice of the Certification Order was provided to the Classes via first-class mail addressed
to the last-known addresses of the class members. *See* Doc. 94-4, Declaration Kateryna King, pp.
1-5.

### E.    Confirmation of the Debtors' Chapter 11 Plan

On August 24, 2020, Defendants, along with certain affiliates (collectively, the "Debtors"),
filed in the Bankruptcy Case the Debtors' *Second Amended Joint Plan Pursuant to Chapter 11 of
the Bankruptcy Code* (the "Plan"), which was confirmed on August 31, 2020 pursuant to the
*Findings of Fact, Conclusions of Law, and Order Confirming the Debtors' Second Amended Joint
Plan Pursuant to Chapter 11 of the Bankruptcy Code* (the "Confirmation Order").   *See* Doc. 94-
5.  On September 16, 2020, the Plan went effective (the "Plan Effective Date").

Among other things, a Chapter 11 reorganization plan must provide for full payment of
certain priority claims, including claims for wages and benefits subject to Sections 507(a)(4), (5)
of the Bankruptcy Code.  11 U.S.C. § 1129(a)(9)(B).  In accordance with the Bankruptcy Code,
the Plan provides that "Other Priority Claims", including claims for wages and employee benefits
described in 11 U.S.C. § 507(a)(4), (5), are unimpaired such that holders of such claims will
receive payment in full of such claims.  Doc. 94-5 at 80, 92.  Meanwhile, "General Unsecured
Claims" are impaired and holders of such claims will receive a pro-rata share of certain funds,
estimated at zero to one percent of the value of such claims.  *Id.* p. 96;  Doc. 94-6, Debtors'
Supplemental Disclosure Statement, at 12.

The Plan appoints the Plan Administrator to implement the Plan, administer and distribute
the Debtors' remaining assets, and wind down the Debtors' businesses and affairs.  Doc. 94-5,
Confirmation Order, at 102.  The Plan Administrator is responsible for, among other things,
resolving claims from and after the Plan Effective Date, including the Class Proofs of Claim.  *See*

6

*id.* The Plan allows the Plan Administrator to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court. *Id.* at 119.

### F.    Discovery

In proceedings in this Court and the Bankruptcy Court, the parties served and exchanged written discovery, reviewed and produced thousands of pages of documents, engaged in multiple meet-and-confer conferences, wrote and responded to requests for admission, and agreed to numerous factual stipulations.

### G.    Mediation

Recognizing the risks of litigation included the potential for protracted litigation and appeals, the parties engaged in arm's-length settlement discussions beginning in the summer of 2020. On January 29, 2021, the Parties commenced mediation with attorney Francis X. Neuner, Jr., a respected mediator in St. Louis, Missouri, with extensive experience in employment law. The Parties were unable to reach an agreement during the initial mediation session but continued to engage in negotiations facilitated by Mr. Neuner. On February 12, 2021, the Parties agreed to a "double blind" mediator's proposal, submitted to each side by Mr. Neuner. The material terms of this agreement were reduced to a Term Sheet in the form of an email sent by Mr. Neuner that same day.

### H.    Modification of the Plan Injunction

On October 4, 2021, the Bankruptcy Court entered an order modifying the plan injunction (the "Plan Injunction") arising under the Plan (the "Modification Order"). *See* Doc. 94-7, Modification Order. The Modification Order permits Plaintiffs to seek this Court's approval of the Settlements pursuant to Federal Rule of Civil Procedure 23(e), (h). *Id.* ¶ 1.

### III.    THE SETTLEMENT AGREEMENTS

The terms of the Settlements are set forth in the Mitchell and Rider Settlement Agreements.[2]  *See* Docs. 94-1 and 94-2.  The following is a summary of the Settlements' material terms.

#### A.    The Class Members

The Classes are opt-out classes under Rule 23(b)(3) of the Federal Rules of Civil Procedure.  The Class Members are identified in lists attached to each of the Settlement Agreements as Exhibit 1.  Both Classes are identical to the classes certified by the Bankruptcy Court.  *See id.*

#### B.    The Settlement Relief

Each Settlement affords monetary relief to the respective class members.

##### i.    Mitchell Class

---

[2] The Settlement Agreements are the only agreements made in connection with the Settlements and are therefore the only agreements required to be identified pursuant to Federal Rule of Civil Procedure 23(e)(3).

Pursuant to the Mitchell Settlement, the Plan Administrator will fund a common fund of $550,000.00 (the "Mitchell Settlement Amount"). The Mitchell Settlement Amount will be entitled to priority to the extent permitted pursuant to sections 507(a)(4), (5) of the Bankruptcy Code (11 U.S.C. § 507(a)(4), (5)). Participating Mitchell Class members will receive a pro-rata share of the Net Settlement Fund (*i.e.*, the Settlement Amount less any fee award and/or incentive award granted by the Court) determined in accordance with the following formula:

[Individual Settlement Class Member's estimated WARN Act damages, capped at $13,650.00]

$\div$

[Aggregate estimated WARN Act damages of all Settlement Class Members, with individual damages capped at $13,650.00 ($1,140,459.37)]

**X**

Net Settlement Fund (i.e., the Settlement Amount less the Fee Award and the Incentive Award)

Mitchell Sett. Agrt. § IV.1 – 4, pp. 8-9.

ii.        **Rider Class**

Pursuant to the Rider Settlement, the Plan Administrator will fund a common fund of

$100,000.00 (the "Rider Settlement Amount").  The Rider Settlement Amount will be entitled to

priority to the extent permitted pursuant to sections 507(a)(4), (5) of the Bankruptcy Code (11

U.S.C. § 507(a)(4), (5)).  Participating Rider Class Members will receive a pro-rata share of the

Net Settlement Fund (*i.e.*, the Settlement Amount less any fee award and/or incentive award

granted by the Court) determined in accordance with the following formula:

---

[Individual Settlement Class Member's estimated WARN Act damages, capped at $13,650.00]

÷

[Aggregate estimated WARN Act damages of all Settlement Class Members, with individual

damages capped at $13,650.00 ($596,135.82)]

**X**

Net Settlement Fund (i.e., the Settlement Amount less the Fee Award and the Incentive Award)

---

Rider Sett. Agrt. § IV.1 – 4, pp. 8-9.

iii.        **Taxes**

The Plan Administrator shall be responsible for and pay the *employer's portion* of all

Federal Insurance Contributions Act ("FICA") taxes due as a result of the payments to

participating Mitchell Class and Rider Class members.

The Settlement Administrator shall be responsible for withholding, paying, and reporting the *employee's portion* of all income tax and statutory taxes due from the payments made to the participating Mitchell Class and Rider Class members.  Sett. Agrts., § IV.7, p. 10.

### C.    Releases

The Settlement Agreements contain mutual releases between the Released Persons, on the one hand, and Plaintiffs and the Class Members on the other.  In consideration of the benefits conferred by the Settlement Agreements, all Class Members who do not submit a valid and timely opt-out request will be deemed to have released the Released Persons from claims, demands, damages, causes of action, debts, liabilities, controversies, judgments and suits of every kind and nature whatsoever, foreseen or unforeseen, known or unknown from any and all claims the Settlement Class Members have or may have arising out of or relating directly or indirectly in any manner whatsoever to the facts alleged or which could have been alleged or asserted in the Complaint, FAC, and/or Class Proofs of Claim, including, but not limited to, any and all claims under the Worker Adjustment and Retraining Notification Act ("WARN Act") and all analogous state law claims, including any state WARN Act claims. Sett. Agrts. § IV.9, p. 12.

### D.    Class Representative Service Awards

Class Counsel will ask the Court to approve a service award not to exceed $5,000.00 for each Plaintiff.  *Id.* § VIII.2.  Plaintiffs devoted substantial time and effort assisting counsel in the prosecution of this case by (1) assisting counsel with its pre-complaint investigations, (2) assisting counsel in responding to discovery requests, and (3) engaging in regular meetings, telephone conferences, and written communication with counsel.  These awards will compensate the Plaintiffs for their time and efforts in the litigation, and for the risk they undertook in prosecuting the cases against Defendants.  Pursuant to the Settlements, any Service Awards approved by the Court will be paid out of the Mitchell Settlement Amount and the Rider

Settlement Amount.  *Id.* § IV.4.

### E.      Attorneys' Fees and Costs

Any award of attorneys' fees, costs and expenses to Class Counsel will be payable solely from the Mitchell Settlement Amount and the Rider Settlement Amount, and is subject to Court approval.  *Id.* § VIII.1.  Class Counsel timely filed their Fee Petition seeking an award of attorneys' fees equal to 33% of the Mitchell Settlement Amount and the Rider Settlement Amount.  *See* Doc. 101.

## IV.   PRELIMINARY APPROVAL AND SUBSEQUENT DEVELOPMENTS.

### A.      The Preliminary Approval Orders

On January 3, 2022, the Court entered its Preliminary Approval Orders (Docs. 98 and 99), finding as follows with respect to each Settlement:

> [T]here is probable cause to believe that the settlement is fair, reasonable and adequate, and has been negotiated at arms' length between experienced attorneys familiar with the legal and factual issues of this case, who have diligently investigated and prosecuted this matter, and was facilitated and overseen by an experienced mediator, Francis X. Neuner, Jr.

Docs. 98, 99, ¶ 4.

The Court approved the Settlements' Notice Plans, finding that they were "the best notice practicable under the circumstances, a reasonable manner for notice, and constitute[d] valid, due, and sufficient notice to the classes in full compliance with the requirements of applicable law, including but not limited to the Due Process Clause of the United States Constitution . . . ."  *Id.* ¶ 8.

The Court approved the appointment of JND Legal Administration Company as Settlement Administrator, *Id.* ¶ 7, and directed the Settlement Administrator to mail Settlement Notice to the Class Members on or before February 3, 2022.  *Id.* ¶ 26.  The Court also directed

the Settlement Administrator to establish a Settlement Website, including links to the Settlement

Notice, the Settlement Agreements, the Fee Application, applicable deadlines, and orders of the

Court pertaining to the Settlement.  *Id.* ¶¶ 8(b), 26.

The Court directed Class Counsel to file its Fee Application on or before March 7, 2022.

*Id.* ¶ 18.  The Court also set a deadline of April 4, 2022, for Class Members to opt-out of the

Settlements, file an objection to the Settlements or the Fee Application, or file a notice of

intention to appear at the Final Fairness Hearing.  *Id.* ¶¶ 11-17.

Finally, the Court scheduled a Final Approval Hearing for June 2, 2022, at 1:30 p.m. "on

the fairness, adequacy, and reasonableness of the Settlement Agreement and Fee Application,

and to determine whether Final Judgment approving the settlement and dismissing with prejudice

all claims asserted in the litigation should be entered."  *Id.* ¶ 10.

### B.    Subsequent Developments

Following Preliminary Approval, the Settlement Administrator activated the Settlement

Website and timely mailed Settlement Notice to the Class Members.  *See* Exhibit 1, Declaration

of Markus Bulthuis, ¶¶ 4-8.

On March 7, 2022, Class Counsel filed its Fee Application (Doc. 101), which was posted

on the Settlement Website on April 26, 2022. Ex. 1, Bulthuis Dec., ¶ 9.  On April 27, 2022, the

Court's Order Granting Joint Motion to Amend Preliminary Approval Orders was posted on the

Settlement Website.  *Id.* ¶ 10.  This Order extended the deadline for Settlement Class Members

to file an objection to the Fee Application to and including May 23, 2022.  Doc. 103.

As of the date of the filing of this Motion, no objections to the Settlements or the Fee

Application have been filed with the Court or received by Class Counsel or Defendants'

Counsel.  Exhibit 2, Declaration of Thomas Horscroft, ¶ 4.  No Class Members have opted out of

either Settlement.  Ex. 1, Bulthuis Dec. ¶ 11;  Ex. 2, Horscroft Dec. ¶ 4.

## V.    ARGUMENT:  THE SETTLEMENTS SHOULD BE APPROVED

A proposed class action settlement may be approved if the Court, after allowing absent class members an opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  The facts are viewed in the light most favorable to the settlement. *Isby v. Bayh,* 75 F.3d 1191, 1199 (7th Cir. 1996).

In granting preliminary approval of the Settlements, the Court was required to determine that it was likely to find each Settlement fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(1)(B)(i).  The Court's expectation that it would likely approve the Settlements was well-founded and finds further support in the absence of any objections by Class Members to either Settlement and the absence of any requests for exclusion from either Settlement.  *See, e.g.*, *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, Case No. 97 C 7694, 2001 U.S. Dist. LEXIS 20397, *7-8 (N.D. Ill. Dec. 6, 2001).

For the reasons set forth below, final approval of each Settlement is warranted.

### A.    Settlements of Class Actions are Favored and Begin with a Presumption of Fairness.

"The compromise of complex litigation is encouraged by the courts and favored by the public policy."  4 Herbert B. Newberg & Alba Conte on Class Actions § 11:41 (4th ed.) ("Newberg").  *See also Dawson v. Patrick*, 600 F.2d 70, 75 (7th Cir. 1979) ("It is a well settled principle that the law generally encourages settlements . . . . "); *Isby,* 75 F.3d at 1196 ("Federal courts naturally favor the settlement of class action litigation.").  *Newberg* goes on to state "by their very nature, because of the uncertainties of outcome, difficulties of proof, and length of litigation, class action suits lend themselves readily to compromise." *Id.*

In assessing whether a settlement of a class action is ultimately fair, where, as here, a proposed settlement is negotiated in good faith, there is an initial presumption of fairness.  *Id.*

*See also Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 315 (7th Cir. 1980) ("We also consider the facts in the light most favorable to the settlement.").  Consistent with this approach, courts "do not focus on individual components of the settlements, but rather view them in their entirety in evaluating their fairness."  *Id.*

### B.    The Settlements are Fair, Reasonable, and Adequate.

In determining whether a proposed class action settlement is fair, reasonable, and adequate under Rule 23(e)(2), the Court must consider whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

    (i)    the costs, risks, and delay of trial and appeal;

    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D).

In addition, courts may consider factors that were established prior to the December 2018 amendment of Federal Rule of Civil Procedure 23(e) to "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  Advisory Committee Notes, 2018 Amendments, Subdivision (e)(2).  *See Huffman v. Prudential Ins. Co. of Am.*, No. 2:10-cv-05135, 2019 U.S. Dist. LEXIS 58667, *7-8 (E.D. Pa. Apr. 4, 2019) (considering pre-existing Third Circuit factors); *Cty. of Monmouth, N.J. v. Fla. Cancer Specialists, P.L.*, No. 2:18-cv-201-FtM-23MRM, 2019 U.S. Dist. LEXIS 58199, *5

(M.D. Fla. Apr. 4, 2019) (same as to Eleventh Circuit factors); *McLeod v. Bank of Am., N.A.*, No.
16-cv-03294-EMC, 2019 U.S. Dist. LEXIS 40869, *6-7 (N.D. Cal. Mar. 13, 2019) (same as to
Ninth Circuit factors); *Swinton v. SquareTrade, Inc.*, No. 4:18-CV-00144-SMR-SBJ, 2019 U.S.
Dist. LEXIS 25458, *16 (S.D. Iowa Feb. 14, 2019) (considering pre-existing Eighth Circuit
factors, along with Rule 23(e)(2) concerns).  The factors in the amended Rule 23(e) align with
the various factors previously examined in this Circuit.  *See, e.g.*, *Synfuel Tech. v. DHL Express*,
463 F.3d 646, 653 (7th Cir. 2006).

Here, consideration of the applicable factors demonstrates that each Settlement is fair,
reasonable, and adequate.  First, the Class Representatives and Class Counsel have vigorously
represented the Class Members over the course of prolonged litigation in multiple forums
requiring extensive investigation of the applicable law and facts.  Second, the Settlements are the
result of sustained and contentious arm's-length negotiations among experienced counsel,
including experienced bankruptcy counsel, overseen by an experienced mediator.  Third, the
Settlements' monetary relief for the respective members of each Class is substantial and
adequate given the risks and delays posed by further litigation.  Fourth, each Settlement treat the
affected Class Members equitably relative to each other by allocating settlement payments in
proportion to the estimated WARN Act damages of each class member.   Finally, the absence of
any objections to or opt-outs from either Settlement and Class Counsel's endorsement of the
Settlements weigh in favor of approval.

Accordingly, the Court should approve each Settlement.

**1.    The Class Representatives and Class Counsel have adequately
represented the Classes.**

Since this action began in 2017, Class Counsel have drawn on their experience to unearth
the facts, research the law, and assess and advance the Class Members' claims.  Class Counsel

have scrutinized thousands of pages of documents produced during discovery.  In proceedings before this Court, Class Counsel prepared a Response to Defendants' Motion for Summary Judgment, Response to Defendant's Motion to Dismiss Count II of the FAC, and a Motion for Class Certification.

Following Defendants' 2019 bankruptcy filing, Class Counsel prepared and filed the Class Proofs of Claim, the Adversary Proceeding Complaint, and a Motion to Apply Federal Rule of Bankruptcy Procedure 7023 to Putative Class Proofs of Claim.  Thereafter, Class Counsel negotiated various stipulations with opposing counsel, culminating in the Bankruptcy Court's Certification Order.  Doc. 94-3, at 1-4.  These actions preserved the Class Members' ability to pursue their claims under the WARN Act despite Defendants' bankruptcy, paving the way for the Settlements.

Before the Settlements were reached, Class Counsel and Defendants' Counsel engaged in robust discussions prior to, during, and after mediation regarding the factual and legal issues presented by the WARN Claims and Defendants' bankruptcy.

Accordingly, Class Counsel negotiated each Settlement on behalf of the Class Members with the benefit of a thorough understanding of the potential outcomes were litigation to continue, and Class Counsel have adequately represented the Classes.  *See Hale v. State Farm Mut. Auto. Ins. Co.,* 2018 U.S. Dist. LEXIS 210368, *13 (S.D. Ill. Dec. 13, 2018) ("Class Counsel have 'extensive experience in prosecuting RICO claims, class actions, and various complex cases' . . . and have litigated this case intensively, and successfully, for almost seven years . . . . Adequacy of representation is uncontested and favors approval.").

**2.**      **The Settlements were negotiated at arm's length under the
supervision of an experienced third-party mediator.**

A court is more likely to determine that a class action settlement is adequate, where, as

here, "the settlement was reached through extensive arm's length negotiations with an

experienced third-party mediator" following contentious litigation.  *See Wong v. Accretive

Health, Inc.,* 773 F.3d 859, 864-65 (7th Cir. 2014).  Here, the parties engaged in contentious

settlement negotiations beginning in the summer of 2020 following years of contentious

litigation.  These negotiations spanned many months and involved written proposals, telephone

conferences, and a mediation supervised by Francis X. Neuner, Jr. in January 2021.  Following

this January 2021 mediation, the parties engaged in additional negotiations before Mr. Neuner

presented a "double-blind" mediator's proposal to both sides. Both sides accepted Mr. Neuner's

proposal, resulting in the Settlements.[3]  The negotiation process culminating in the Settlements

weighs heavily in favor of a finding that the Settlements are fair, reasonable, and adequate.  *See

Wong*, 773 F.3d at 864-65.

**3.**      **The relief provided to the Class Members is adequate.**

The Seventh Circuit has "repeatedly stated that "[t]he most important factor relevant to

the fairness of a class action settlement is . . . the strength of plaintiff's case on the merits

balanced against the amount offered in the settlement.'" *Kaufman v. Am. Express Travel Related

Servs. Co.*, 877 F.3d 276, 284 (7th Cir. 2017) (internal quotations and citations omitted).  While

the district court must acknowledge "potential defenses and the risk of failure for the class," an

"evaluation of potential outcomes need not always be quantified, particularly where there are

other reliable indications that the settlement reasonably reflects the relative merits of the case."

---

[3] The offers exchanged by the parties and Mr. Neuner's mediator's proposal appropriately
contained separate proposals regarding the Mitchell Class and the Rider Class.

*Id.* at 285.  *See also Wong*, 773 F.3d at 864 (court's decision not to quantify the net expected

value of continued litigation was not an abuse of discretion where a class action settlement was

"proposed by an experienced third-party mediator after an arm's length negotiation where the

parties' positions on liability and damages were extensively briefed and debated.").

Here, each Settlement's benefits reasonably reflect the relative merits of the case and the

risks associated with continued litigation, and the remaining Rule 23(e)(2)(C) factors favor

approval.

### i.        The WARN Act

The WARN Act provides that "[a]n employer shall not order a plant closing or mass

layoff until the end of a 60-day period after the employer serves written notice of such an order .

. . to each affected employee." 29 U.S.C. § 2102.  A "plant closing" is "the permanent or

temporary shutdown of a single site of employment, or one or more facilities or operating units

within a single site of employment, if the shutdown results in an employment loss at the single

site of employment during any 30-day period for 50 or more employees excluding any part-time

employees."  29 U.S.C. § 2101(a)(2).  "Affected employees" are "employees who may

reasonably be expected to experience an employment loss as a consequence of a proposed plant

closing . . . ."  29 U.S.C. § 2101(a)(5).

The Fourth Circuit holds that "under the WARN Act, when an affected employee's layoff

date is earlier than the date of the plant shutdown, the affected employee is entitled to notice of

the closing 60 days before the date of that employee's layoff."  *UMW v. Martinka Coal Co.*, 202

F.3d 717, 722 (4th Cir. 2000).  "[O]nce a plant closing is identified -- as defined in the statute --

the 60 days' notice must be given to all employees affected by the closing.  It is this causal

connection between the plant closing and the laid-off employees -- not any temporal limitation --

that serves to define the class of employees to whom notice is due."  *Id.* at 723.

The WARN Act also requires "additional notice" whenever an employer postpones the

date or schedule of dates associated with a plant closing beyond the dates announced in a prior

WARN notice.  *See* 20 C.F.R. § 639.10.

###            ii.            The Bankruptcy Code and the Plan

The Bankruptcy Code affords priority status to claims for wages and benefits earned

within 180 days before the cessation of a debtor's business.  *See Fah Liquidating Corp. v. Fisker*

*Auto. Holding, Inc.*, Nos. 13-13087 (KG), 13-52517 (KG), 2019 Bankr. LEXIS 1610, at *9

(Bankr. D. Del. May 28, 2019) (citing 11 U.S.C. § 507(a)(4)-(5)).[4]  Such priority status is

available for wages and benefits awarded pursuant to the WARN Act.  *Id.*  Courts generally

conclude that back pay under the WARN Act is earned upon termination.  *See, e.g.*, *Henderson*

*v. Powermate Holding Corp. (In re Powermate Holding Corp.)*, 394 B.R. 765, 776-77 (Bankr. D.

Del. 2008).

To determine when a debtor's business ceases, courts employ a balancing test that

considers whether a debtor: (1) discharged all or substantially all of its employees; (2) ceased

performing its usual work; and (3) continued in business or liquidated.  *Fah Liquidating*, 2019

Bankr. LEXIS 1610, *10.

Under the Bankruptcy Code, a Chapter 11 reorganization plan must provide for full

payment of claims that are entitled to priority under 11 U.S.C. § 507(a)(4), (5).  11 U.S.C. §

1129(a)(9)(B).  In accordance with the Bankruptcy Code, the Plan provides that claims for wages

---

[4] The Bankruptcy Code caps the amount of a claim for wages and benefits that may receive
priority at $13,650.00.  *See* 11 U.S.C. § 507(a)(4), (5).

and employee benefits described in 11 U.S.C. § 507(a)(4), (5), are unimpaired such that holders

of such claims will receive payment in full of such claims.  *Supra*, p. 6.  Meanwhile, "General

Unsecured Claims" are impaired, and holders of such claims will receive an estimated zero to

one percent of the value of their claims.  *Supra*, p. 6.

### iii.      Mitchell Class

Mitchell alleges that Defendants violated the WARN Act by failing to provide advance

written notice to him of his April 22, 2017 "employment loss" that occurred as a consequence of

a proposed plant closing.  Doc. 51, ¶¶ 88, 90.  The Mitchell Class consists of Mitchell and 104

similarly-situated employees who also suffered "employment loss" on or around April 22, 2017.

*Supra,* pp. 4, 8.  The Mitchell Class seeks recovery of back pay and benefits for a 60-day period

pursuant to 29 U.S.C. § 2104(a).  The Mitchell Class Proof of Claim against TACC seeks

priority status for such back pay and benefits pursuant to the Bankruptcy Code, 11 U.S.C. §

507(a)(4), (5).

Defendants make two principal arguments against liability under the WARN Act:  (1)

only employees who are laid off within 90 days of the actual cessation of operations at a plant

are entitled to advance written notice in the event of a plant closing, relying in part on dicta from

a Fifth Circuit decision, *Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 382 (5th Cir.

2000); and (2) the termination of the Mitchell Class Members did not occur as a consequence of

a proposed plant closing.

Defendants further argue that the Mitchell WARN Claims lack priority under the

Bankruptcy Code because TACC's operations ceased more than 180 days after April 22, 2017

(i.e., after October 19, 2017) in that some employees remained at Galatia after October 19, 2017,

and some activity continued at Galatia after that date, such that no priority exists under 11 U.S.C. § 507(a)(4), (5).

Pursuant to the Mitchell Settlement, participating Mitchell Class Members will receive substantial cash payments from a common fund totaling $550,000.00, resulting in an average pre-tax payment to participating Mitchell Class Members of approximately $3,400.[5]  *Supra,* p. 8. Based on its review of Defendants' employment records, Class Counsel estimates that an award of back pay and benefits for a 60-day period to the Mitchell Class Members would total approximately $1.1 million.  Accordingly, the Mitchell Class Members' recovery under the Mitchell Class Settlement represents a substantial portion of the back pay and benefits such members would receive were they to prevail on their claims under the WARN Act and under the Bankruptcy Code.

### iv.      Rider Class

Rider alleges that Defendants violated 20 C.F.R. § 639.10 by failing to provide "additional notice" when Galatia's closure was postponed beyond August 20, 2017, the date announced in WARN Notices issued to the Mitchell Class Members by Defendants in June 2017. Doc. 51, ¶¶ 50, 53, 100-112 and Exs. 5,7.  The Rider Class comprises Rider and 46 similarly situated former Galatia workers and seeks recovery of back pay and benefits for a 60-day period pursuant to 29 U.S.C. § 2104(a).  Each Rider Class Member suffered employment loss during the period August 21, 2017 to October 14, 2017.  *Supra*, pp. 5, 8.  The Rider Class Proof of Claim

---

[5] This estimate was calculated by subtracting the requested Fee Award (i.e., 33% of the Mitchell Settlement Amount) and the requested Incentive Award (i.e., $5,000) from the Mitchell Settlement Amount and then dividing the resulting amount number by 105, the number of individuals in the Mitchell Class.

against TACC seeks priority status for such back pay and benefits pursuant to the Bankruptcy Code, 11 U.S.C. § 507(a)(4), (5).

As set forth in Defendants' Motion to Dismiss, Defendants argue the Rider Class Claims fail for multiple reasons not applicable to the Mitchell Class Claims:

- The applicable statute of limitations (which Defendants claim is six-months) bars Count II;

- Violations of 20 C.F.R. § 639.10 do not give rise to a private right of action; and

- Rider worked for more than sixty days after receiving a delay notice on June 20, 2017, and, therefore, he has no damages under the WARN Act.

Doc. 63.

Although this Court rejected these defenses in denying Defendants' Motion to Dismiss, Defendants may yet prevail on appeal.   Moreover, even if these defenses remain unsuccessful, Defendants would contest the duration of any violation of 20 C.F.R. § 639.10.  Where a postponement is for less than 60 days, additional notice must be given "as soon as possible."  20 C.F.R. § 639.10(a).  Defendants would argue that it was not possible to provide additional notice of the postponement at issue until on or after August 20, 2017, by which time Defendants knew which employees would be terminated in the period announced in their June 2017 notice and which employees would remain at Galatia beyond that period.  If successful, this argument would reduce the violation period under the WARN Act and, in turn, the Rider Class Members' recovery by approximately 25% to 100%, depending on the date on which the worker was terminated and the date on which it was possible to provide additional notice.  *See* 29 U.S.C. § 2104(a)(1) (back pay and benefits available only for period of WARN Act violation).

Further, as with the Mitchell Class, any recovery by the Rider Class under the WARN Act would then depend on establishing that the Rider Class Claims enjoy priority under the Bankruptcy Code.

Pursuant to the Rider Settlement, the Rider Class Members will receive substantial cash payments from a common fund totaling $100,000.00, resulting in an average pre-tax payment to Rider Class Members of approximately $1,200.[6]  Based on its review of Defendants' employment records, Class Counsel estimates that an award of back pay and benefits for a 60-day period to the Rider Class Members would total approximately $600,000.00.  Accordingly, the Rider Class Members' recovery under the Rider Class Settlement represents a substantial portion of the back pay and benefits such members would receive were they to prevail completely on their claims under the WARN Act and then establish priority under the Bankruptcy Code.

### v.        Rule 23(e)(2)(C) Factors

Although Plaintiffs dispute Defendants' defenses, continued litigation presents a certain risk of delay and a meaningful risk that the Class Members receive nothing.  Even if the Class Members prevail completely on their claims under the WARN Act, they could fail to establish priority under the Bankruptcy Code for their claims, in which event their recovery would be at most 1% of the value of their claims.  In light of these risks, the Settlements provide substantial and adequate relief to the Class Members.  *See Philips v. Munchery Inc.*, No. 19-cv-00469-JSC, 2021 U.S. Dist. LEXIS 18711, at *15 (N.D. Cal. Feb. 1, 2021) (26% recovery of estimated

---

[6] This estimate was calculated by subtracting the requested Fee Award (i.e., 33% of the Rider Settlement Amount) and the requested Incentive Award (i.e., $5,000) from the Rider Settlement Amount and then dividing the resulting amount number by 47, the number of individuals in the Rider Class.

priority WARN Act damages in class settlement with bankrupt defendant fair and adequate in light of risks of continued litigation and defendant's bankruptcy).

Likewise, the direct mailing of checks to the Class Members without the need for Class Members to make claims, weighs in favor of approval. *Chambers v. Together Credit Union*, No. 19-CV-00842-SPM, 2021 U.S. Dist. LEXIS 92150, at *6-7 (S.D. Ill. May 14, 2021) ("The method of distributing the Net Settlement Fund is by direct payment, which is the best and most effective method of ensuring Class members receive the funds they are due and requires no claims to be submitted."). Moreover, Class Counsel's proposed request for an award of attorneys' fees equal to 33% of each common fund created by the Settlements does not undermine the adequacy of the relief, as such an award is both authorized and representative of the market price for legal services. *See Chambers v. Together Credit Union*, No. 19-CV-00842-SPM, 2021 U.S. Dist. LEXIS 92151, at *4-6 (S.D. Ill. May 14, 2021). Lastly, the only agreements made in connection with the proposed settlements are the Settlements, and nothing in the Settlements undermines the adequacy of the relief afforded to the Class Members by the Settlement Agreements.

In short, the pertinent factors under Rule 23(e)(C) support a finding that each Settlement is fair, reasonable, and adequate.

### 4.    The Settlements treat class members equitably relative to each other.

The Settlements treats the respective members of each class equitably relative to their fellow class members by allocating the settlement payments to each class members in proportion to the estimated recovery each class member would have received in the event the Classes prevailed on both their WARN Act and Bankruptcy Code claims. This approach ensures that the

each Class Member receives a fair share of the settlement proceeds.  Accordingly, the
Settlements treat Class Members equitably relative to each other.

> **5.    No Class Members have objected to or requested exclusion
>          from either Settlement.**

In evaluating the fairness of a settlement, the Seventh Circuit also examines "the amount
of opposition to settlement among affected parties, 463 F.3d at 653.  Here, no Class Members
have opted out of or filed an objection to either Settlement.  These facts, which reflect a positive
acceptance among the affected parties of the Settlements, weigh in favor of approval.  *See
Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 326 (7th Cir. 1980) (although "a district court
should be hesitant to infer that the class supports a settlement merely because its members are
silent, where this silence is coupled with other indicia of fairness, it provides further support for
approval"); *Uhl v. Thoroughbred Tech. & Telecomms., Inc.,* 309 F.3d 978, 987-88 (7th Cir.
2002) (fact that only 250 of the 58,000 class members opted out supported approval); *Isby v.
Bayh,* 75 F.3d 1191, 1200 (7th Cir. 1996) ("amount of opposition to the proposed settlement did
not compel its rejection" when "[o]nly thirteen per cent of the class submitted written
objections").

> **6.    Declaration of Class Counsel**

Finally, a declaration from Class Counsel showing that they believe a class action
settlement is an excellent result for the class supports finding that a class action settlement is fair,
reasonable, and adequate.  *See Chambers*, 2021 U.S. Dist. LEXIS 92150, at *7.  Attached hereto
as Exhibit 3 is the declaration of Thomas P. Rosenfeld setting forth Class Counsels' experience
and belief that each Settlement represents an excellent outcome for its respective Class Members.
Mr. Rosenfeld's declaration further supports a finding that each Settlement is fair, reasonable,
and adequate.

## VI.     CONCLUSION.

For the foregoing reasons, Plaintiffs respectfully requests that the Court grant final approval of each Settlement.

Dated: May 12, 2022

Respectfully submitted,

**GOLDENBERG HELLER & ANTOGNOLI, P.C.**

By: /s/ *Thomas C. Horscroft*
Thomas P. Rosenfeld #06301406
Kevin P. Green #06299905
Thomas C. Horscroft #06327049
2227 South State Route 157
Edwardsville, IL 62025
Telephone:  618-656-5150
Fax:  618-656-8169
tom@ghalaw.com
kevin@ghalaw.com
thorscroft@ghalaw.com

**LUPER NEIDENTHAL & LOGAN**

Kenneth M. Richards (admitted pro hac vice)
1160 Dublin Road, Suite 400
Columbus, OH 43215
Telephone:  614-221-7663
Fax:  866-345-4948
krichards@lnlattorneys.com

*Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing was electronically filed with the United States District Court, Southern District of Illinois, via the Court's CM/ECF filing system, which will send notification of such filing to counsel of record, on May 12, 2022.

<u>/s/ Thomas C. Horscroft</u>